**IN THE UNITED STATES DISTRICT COURT**
**for the District of Rhode Island**

**INFINITE PRISM, INC. d/b/a FINE ART METROPOLIS** CA 05 187 ML

**Plaintiffs,**

**vs.** **Civil Action No. _______**

**TREASURER OF THE UNITED STATES;**
**EDWARD ST. GEORGE, JR., IN HIS CAPACITY AS**
**ADMINISTRATOR OF THE ESTATE OF MICHAEL ST. GEORGE;**
**ATTORNEY GENERAL FOR THE STATE OF RHODE ISLAND; AND**
**ATTORNEY GENERAL FOR THE COMMONWEALTH OF MASSACHUSETTS**

**Defendants,**

## COMPLAINT FOR STATUTORY INTERPLEADER
**Pursuant to 28 U.S.C. § 1335(a)**

1. This is an interpleader action brought pursuant to 28 U.S.C. § 1335 seeking an adjudication by this Honorable Court with respect to conflicting claims to certain contractual rights, valued in excess of $500, that plaintiff, Infinite Prism, Inc. d/b/a Fine Art Metropolis, has in its possession and with respect to the distribution of 40% of the funds governed by such contractual rights [collectively, "40% Contract Rights," all as described herein] that it expects to receive in the future.

2. Plaintiff, Infinite Prism, Inc. d/b/a Fine Art Metropolis, claims no interest in those contractual rights to 40% of the future funds in question, but only seeks the aid of this court in determining who has the right to those contractual rights and said future funds in question and in resolving and putting to rest the conflicting claims that may be raised with respect to those funds.

## JURISDICTION AND VENUE

3. Original jurisdiction is conferred on this Court by 28 U.S.C. § 1335, in that this is



1

a civil action of interpleader filed by persons having in their custody or possession money or property of the value of $500 or more.

4. Jurisdiction is proper in that several claimants are claiming or may assert a claim in the future to the funds at issue herein.

5. Jurisdiction is proper in that some of the claimants are of diverse citizenship, as that term is defined in 28 U.S.C. § 1332. Specifically, there is diversity of citizenship among the claimants:

| | |
|---|---|
| •Edward St. George, Jr., Administrator | Florida |
| •Attorney General of the Commonwealth of Massachusetts | Massachusetts |
| •Attorney General of the State of Rhode Island | Rhode Island |
| •Treasurer of the United States | |

6. Jurisdiction is proper in that plaintiff stakeholder has tendered for deposit with this court such 40% Contract Rights pursuant to 28 U.S.C. § 1335(a)(2), and hereby moves for leave to irrevocably assign and transfer such 40% Contract Rights into the Registry of the Court.

7. Venue is proper under 28 U.S.C. § 1397 in that this is a civil action of interpleader brought pursuant to 28 U.S.C. § 1335 and at least one potential claimant resides in this district.

**PARTIES**

8. Plaintiff, Infinite Prism, Inc., is a corporation organized under Rhode Island law, doing business as Fine Art Metropolis, having a usual and only place of business in Rhode Island. Plaintiff is a disinterested stakeholder with respect to the 40% Contract Rights and future funds at issue in this case, and claims no interest in such for itself.

9. Defendant Edward St. George, Jr., the Administrator of the Estate of Michael W.

St. George, is domiciled in the State of Florida and represents the interests of Michael W. St. George, decedent (hereinafter "the decedent"), who formerly resided in North Attleboro, Massachusetts. The defendant, Edward St. George, Jr., in his said capacity is a claimant to the funds at issue and has actually made a claim for them.

10. The Attorney General for the State of Rhode Island and Providence Plantations is charged with enforcing the rights and interests of assets dedicated to public charities located in Rhode Island. Since the funds at issue herein had been dedicated to a public charitable purpose by the decedent; and since (i) performance of the contract by plaintiff, and (ii) the creation of the funds, were both contemplated to occur in Rhode Island; the Attorney General of Rhode Island may have an interest in the disposition of the charitable-dedicated funds. Moreover, should the funds or a portion of the funds escheat to the public interest, the Attorney General of Rhode Island will have an interest in enforcing the state's right to the funds.

11. The Attorney General for the Commonwealth of Massachusetts is charged with enforcing the rights and interests of assets dedicated to public charities located in Massachusetts. Since the funds at issue herein had been dedicated to a public charitable purpose by the decedent, then a resident of Massachusetts, the Attorney General of Massachusetts may have an interest in the disposition of the funds. Moreover, should the funds or a portion of the funds escheat to the public interest, the Attorney General of Massachusetts will have an interest in enforcing the commonwealth's right to the funds.

12. The Treasurer of the United States/ The United States Department of the Treasury is the vested remainder beneficiary of the 40% Contract Rights and future funds, named as such in the agreement between plaintiff and decedent. Since plaintiff requires an adjudication of this court with respect to the possible interests of the United States, plaintiff has named the Treasurer

of the United States, as a potential claimant to those funds.

**SUMMARY OF ADVERSE CLAIMS**

13. On or about December 8, 2003, plaintiff, Infinite Prism, Inc. d/b/a Fine Art Metropolis, entered into an agreement with the decedent, Michael St. George, pursuant to which decedent did convey to plaintiff his then current inventory of creative art works and his rights in art works that he would create in the future. *See* Fine Art-St. George Agreement ("Exhibit A").

14. In consideration therefore, plaintiff agreed to pay Michael St. George various revenues during his lifetime.

15. The parties agreed that upon Michael St. George's death, plaintiff would retain 60% of the profits derived from the sale of any art works acquired by the plaintiff from Michael St. George and that the remaining 40% of such profits would accrue and be payable to tax-exempt charitable organizations.

Such 40% share is referred to in this Complaint as the "40% Contract Rights."

The Agreement states in relevant part:

> Upon the artist's death, buyer shall retain 60% of any profits from the sales of these creative assets or rights, and the remaining balance of 40% is hereby assigned by the artist to the tax-exempt charitable organizations listed in the attached schedule in the proportions so stated, such charitable organizations, individually and collectively, to have full authority to collect and receive such distributions, which shall be used by them exclusively in furtherance of their charitable purposes. Upon making each such distribution, buyer shall be released and forever discharged with regard to the making of such distribution on account of the sale(s) so being accounted for. If a named organization ceases to exist or shall no longer be tax-exempt, the share such organization would have received shall be distributed pro-rata among the others. Should all the named organizations cease to exist and/or no longer be tax exempt, money due hereunder to such organizations shall be paid to the Treasurer of the United States. Artist may change that list at anytime by a writing delivered to buyer during artist's lifetime, signed by artist and in which his signature has been notarized.

Fine Art-St. George Agreement ¶ 6.

16. However, the schedule of enumerated charitable organizations was not completed by the decedent, at the time he executed the agreement, December 8, 2003.

17. Decedent Michael St. George died in less than two months after signing the agreement, on or about February 5, 2004 without indicating on a written schedule which charities to whom he wanted to assign his rights under the agreement though he had made his desires known orally. Therefore, plaintiff is unable to determine who is entitled by law to receive the post-death benefits.

18. Plaintiff expects to realize revenues from the sale of creative works of art subject to the Fine Art-St. George Agreement. The entitlement to that portion of those revenues pertaining to the decedent—that is 40% of profits ("40% Contract Rights")—remains uncertain. Plaintiff therefore needs an adjudication by this court to determine the rights to these revenues and to similar revenues which are accrued in the future.

**COUNT ONE**
**Deposit in Court of Revenue Contract Rights**

19. Plaintiff anticipates revenues from the sale of art works subject to the Fine Art-St. George Agreement.

20. Plaintiff therefore requests leave of this court to irrevocably assign the 40% Contract Rights into the Registry of this Court pending the outcome of this litigation.

**COUNT TWO**
**Plaintiff's Need For Immediate Injunctive Relief**

21. The Estate of Michael W. St. George has asserted a claim to the 40% Contract Rights at issue in this case.

22. Due to the estate's demand, plaintiff is threatened with the possibility of incurring liability to diverse parties making inconsistent claims to the 40% Contract Rights at issue.

23. The other parties to this case, when they become aware of the charitable dedication of the 40% Contract Rights by the decedent, will likely assert a claim to all of the 40% Contract Rights. Plaintiff is therefore faced with the possibility of having to defend itself in more than one forum.

24. In order to prevent such liability arising under the Fine Art-St. George Agreement, plaintiff requires, in addition to the final order of this court, temporary and preliminary injunctions enjoining the defendants from attempting to enforce any rights which they may have to 40% Contract Rights.

**COUNT THREE**
**Order Requiring the Claimants to Appear and Litigate their Respective Rights to the 40% Contract Rights at issue under the Fine Art-St. George Agreement**

25. Having moved for leave to irrevocably deposit the 40% Contract Rights arising from the Fine Art-St. George Agreement as may in the future come into its possession or control, and being a disinterested stakeholder that makes no claim to the funds at issue, plaintiff is entitled to an order dismissing it from this action.

**COUNT FOUR**
**Claim for Attorney's Fees**

26. Plaintiff has brought this action solely to secure relief from inconsistent claims to the 40% Contract Rights at issue. Plaintiff makes no claim to those 40% Contract Rights for itself.

27. Plaintiff therefore is entitled to an award of attorney's fees.

WHEREFORE, Infinite Prism, Inc. d/b/a Fine Art Metropolis, plaintiff and disinterested stakeholder herein, demands the following relief of this honorable Court:

(1) The granting of a Temporary Restraining Order against each and all of the defendants, enjoining each of them from attempting to enforce its purported rights against the plaintiff;

(2) The granting of a Preliminary Injunction against each and all of the defendants, enjoining each of them from any attempt or action to enforce purported rights arising under the Fine Art Metropolis-St. George Agreement or to the 40% Contract Rights at issue in this case;

(3) An Order of this Court directing the defendants to interplead and settle before this Court and amongst themselves their rights to the 40% Contract Rights at issue;

(4) Permanent injunctions against each and all of the claimants individually, enjoining and restraining them from pursuing any purported rights under the Fine Art-St. George Agreement or to the 40% Contract Rights at issue, except to the extent specifically allowed by this Court in its final judgment in this case;

(5) That plaintiff be discharged from all liability in the premises;

(6) That plaintiff recover its costs;

(7) That plaintiff recover its attorney's fees; and

(8) Such other and further relief as the Court deems just and equitable under the circumstances.

Dated: April 27, 2005

Infinite Prism Inc. d/b/a Fine Art Metropolis

By its Attorney,

Moore & Bogosian

By [signature]
Paul J. Bogosian, Jr., Esq.
RI Bar #2233
49 Weybosset Street
Providence, RI 02903
Voice 455-2020
Fax 455-2022

Del Sesto Law Corporation

By Ronald W Del Sesto
Ronald W. Del Sesto, Esq.
RI Bar #242
49 Weybosset Street
Providence, RI 02903
Voice 401.421.1492
Fax 401.421.9080
Email: Litigation@in-RI.net

Paul J. Bogosian, Jr., Esq., is designated as trial counsel.

**VERIFICATION**

I declare under oath that I have read the within Complaint and that the facts alleged are true to the best of my knowledge and belief.

Robert A. Schattle, President
Infinite Prism, Inc. d/b/a Fine Art Metropolis

*State of Rhode Island*
*County of* Providence

In Providence on the 27th day of April, 2005, before me personally appeared **Robert A. Schattle**, to me known and known by me to be the person executing the foregoing instrument, and he acknowledged said instrument, by him so executed, to be his free act and deed, and his free act and deed in his said capacity.

Notary Public

**JANICE SPAGNOLI McCORMICK**
**Notary Public No. 16037**
**Commission Expires August 27, 2005**

The following is the agreement between **Michael St. George** ["artist"], of 633 East Washington Street, Unit 17, North Attleboro, MA, and

**Fine Art Metropolis** ["buyer"], a business unit of Infinite Prism Inc. a Rhode Island organized corporation, with an e-mail address of info@fineart-metropolis.com

Michael St George hereby sells his entire existing inventory and future-produced creative assets to Fine Art Metropolis.

For purposes of this agreement, the expression "creative assets" includes all existing and future works of art—such as, by way of illustration, paintings, drawings, sketches, songs, plays, journals, and images, together with all related marks and all copyrights to such items—and the rights to exclusive use of any other materials currently owned by artist that would aid in the telling of the story of his life, work, or his art. All existing and future copyrights to such creative assets shall be owned exclusively worldwide by buyer, who shall have the exclusive right to grant copyright permissions.

As payment for this transaction, buyer will pay artist $15,000: $5000. upon signing and $1,000. monthly for ten consecutive months. During artist's lifetime, the artist will also receive 60% of any profits derived from the sale of any creative asset or rights during artist's lifetime. Profits means revenue derived from any sales or projects involving these assets after subtracting the expenses of the project.

Upon the artist's death, buyer shall retain 60% of any profits from the sales of these creative assets or rights and the remaining balance of 40% is hereby assigned by the artist to the tax-exempt charitable organizations listed in the attached schedule in the proportions so stated, such charitable organizations, individually and collectively, to have full authority to collect and receive such distributions, which shall be used by them exclusively in furtherance of their charitable purposes. Upon making each such distribution, buyer shall be released and forever discharged with regard to the making of such distribution on account of the sale(s) so being accounted for. If a named organization ceases to exist or shall no longer be tax-exempt, the share such organization would have received shall be distributed pro-rata among the others. Should all the named organizations cease to exist and/or no longer be tax exempt, money due hereunder to such organizations shall be paid to the Treasurer of the United States. Artist may change that list at anytime by a writing delivered to buyer during artist's lifetime, signed by artist and in which his signature has been notarized. Buyer has the option at any time after artist's death to buy any portion of the remaining creative assets by paying 40% of the existing market value of such pieces and the copyrights to them. Market value will be determined by an independent art appraiser hired by buyer.

It is buyer and artist's intent that artist shall be paid a cumulative amount that at any month is not less than $1,200/month: (i) should the amount due artist from sales in any month be less than the cumulative total to date paid artist, buyer may pay artist an advance as a draw on future sales; or (ii) should buyer decline to continue payments in amounts in excess of that due artist for sales, artist may make a demand upon buyer for an advance on future sales totalling an amount that will make the cumulative total paid artist be a minimum of $1,200/month. Should buyer not be willing to make such an advance within 30 days of notice, the obligations of the parties shall terminate and artist shall be permitted to take possession of all unsold creative assets in buyers possession, provided that artist shall reimburse buyer for the cumulative amount paid artist that is in excess of artist's share of the sale price of the creative assets. At buyer's option, the sum due buyer may be paid by means of buyer retaining such creative assets buyer selects and the paying of 60 percent of the values listed at time of signing on the attached schedule. Any creative asset not so listed shall be valued comparably to works of similar dimension and medium.

**EXHIBIT A**

In the event of a dispute or claim between the parties herein arising from the transaction herein created or related thereto, or the breach thereof, the matter shall be settled by binding arbitration held in Providence, Rhode Island, USA, in accordance with the Rules of Commercial Arbitration of the American Arbitration Association, Expedited Procedures, provided that an arbitrator shall have no power (1) to add to, delete, or modify this agreement, nor (2) to award punitive damages. The parties are bound to cooperate in good faith so that such arbitration may be completed within 30 days of a request for arbitration by a party.

This agreement is made as of 12/8/03, and is binding upon the parties hereto, their heirs and assigns.

| *Buyer* | *Artist* |
|---|---|
| Fine Arts Metropolis, a division of Infinite Prism, Inc. | |
| By [signature] Its President | [signature] Michael St. George |

*State of* Massachusetts
*County of* Bristol

In December on the 8 day of ________, 2003, before me personally appeared Robert A Schwartz the President of said **Fine Arts Metropolis**, to me known and known by me to be the person executing the foregoing instrument, and he acknowledged said instrument, by him so executed, to be his free act and deed, the free act and deed of said **Fine Arts Metropolis**, and his free act and deed in his said capacity.

[signature]
Notary Public

*State of* Massachusetts
*County of* Bristol

In December on the 8 day of ________, 2003, before me personally appeared **Michael St. George**, to me known and known by me to be the person executing the foregoing instrument, and he acknowledged said instrument, by him so executed, to be his free act and deed.

[signature]
Notary Public