The following is the agreement between **Michael St. George** ["artist"], of 633 East Washington Street, Unit 17, North Attleboro, MA, and

**Fine Art Metropolis** ["buyer"], a business unit of Infinite Prism Inc. a Rhode Island organized corporation, with an e-mail address of info@fineart-metropolis.com

Michael St George hereby sells his entire existing inventory and future-produced creative assets to Fine Art Metropolis.

For purposes of this agreement, the expression "creative assets" includes all existing and future works of art—such as, by way of illustration, paintings, drawings, sketches, songs, plays, journals, and images, together with all related marks and all copyrights to such items—and the rights to exclusive use of any other materials currently owned by artist that would aid in the telling of the story of his life, work, or his art. All existing and future copyrights to such creative assets shall be owned exclusively worldwide by buyer, who shall have the exclusive right to grant copyright permissions.

As payment for this transaction, buyer will pay artist $15,000: $5000. upon signing and $1,000. monthly for ten consecutive months. During artist's lifetime, the artist will also receive 60% of any profits derived from the sale of any creative asset or rights during artist's lifetime. Profits means revenue derived from any sales or projects involving these assets after subtracting the expenses of the project.

Upon the artist's death, buyer shall retain 60% of any profits from the sales of these creative assets or rights and the remaining balance of 40% is hereby assigned by the artist to the tax-exempt charitable organizations listed in the attached schedule in the proportions so stated, such charitable organizations, individually and collectively, to have full authority to collect and receive such distributions, which shall be used by them exclusively in furtherance of their charitable purposes. Upon making each such distribution, buyer shall be released and forever discharged with regard to the making of such distribution on account of the sale(s) so being accounted for. If a named organization ceases to exist or shall no longer be tax-exempt, the share such organization would have received shall be distributed pro-rata among the others. Should all the named organizations cease to exist and/or no longer be tax exempt, money due hereunder to such organizations shall be paid to the Treasurer of the United States. Artist may change that list at anytime by a writing delivered to buyer during artist's lifetime, signed by artist and in which his signature has been notarized. Buyer has the option at any time after artist's death to buy any portion of the remaining creative assets by paying 40% of the existing market value of such pieces and the copyrights to them. Market value will be determined by an independent art appraiser hired by buyer.

It is buyer and artist's intent that artist shall be paid a cumulative amount that at any month is not less than $1,200/month: (i) should the amount due artist from sales in any month be less than the cumulative total to date paid artist, buyer may pay artist an advance as a draw on future sales; or (ii) should buyer decline to continue payments in amounts in excess of that due artist for sales, artist may make a demand upon buyer for an advance on future sales totalling an amount that will make the cumulative total paid artist be a minimum of $1,200/month. Should buyer not be willing to make such an advance within 30 days of notice, the obligations of the parties shall terminate and artist shall be permitted to take possession of all unsold creative assets in buyers possession, provided that artist shall reimburse buyer for the cumulative amount paid artist that is in excess of artist's share of the sale price of the creative assets. At buyer's option, the sum due buyer may be paid by means of buyer retaining such creative assets buyer selects and the paying of 60 percent of the values listed at time of signing on the attached schedule. Any creative asset not so listed shall be valued comparably to works of similar dimension and medium.

**EXHIBIT A**

In the event of a dispute or claim between the parties herein arising from the transaction herein created or related thereto, or the breach thereof, the matter shall be settled by binding arbitration held in Providence, Rhode Island, USA, in accordance with the Rules of Commercial Arbitration of the American Arbitration Association, Expedited Procedures, provided that an arbitrator shall have no power (1) to add to, delete, or modify this agreement, nor (2) to award punitive damages. The parties are bound to cooperate in good faith so that such arbitration may be completed within 30 days of a request for arbitration by a party.

This agreement is made as of 12/8/03, and is binding upon the parties hereto, their heirs and assigns.

*Buyer*

Fine Arts Metropolis,
a division of Infinite Prism, Inc.

By [signature]
Its President

*Artist*

[signature]
Michael St. George

*State of* Massachusetts
*County of* Bristol

In December on the 8 day of ________, 2003, before me personally appeared Robert A Shattuck the President of said **Fine Arts Metropolis**, to me known and known by me to be the person executing the foregoing instrument, and he acknowledged said instrument, by him so executed, to be his free act and deed, the free act and deed of said **Fine Arts Metropolis**, and his free act and deed in his said capacity.

[signature]
Notary Public

*State of* Massachusetts
*County of* Bristol

In December on the 8 day of ________, 2003, before me personally appeared **Michael St. George**, to me known and known by me to be the person executing the foregoing instrument, and he acknowledged said instrument, by him so executed, to be his free act and deed.

[signature]
Notary Public